# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| In Re: ) | |
| ) | |
| Debbie L. Anderson, ) | Chapter 13 |
| ) | Case No. 18-20376 |
| Debtor. ) | |
| ) | |

## DECISION ON WELLS FARGO BANK, N.A.'S MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 USC §362(d)(4)(B)

### I. Introduction.

Wells Fargo Bank, N.A. ("Wells Fargo") seeks in rem relief from the automatic stay with respect to the property of debtor Debbie L. Anderson located in Wells, Maine (the "Property"). An evidentiary hearing was held on October 9, 2018. Ms. Anderson was the sole witness and four joint exhibits were admitted into evidence. Based upon the evidence presented by the parties, including the evidence adduced at the hearing and available on the dockets of this Court, Wells Fargo is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4)(B) for the reasons set forth here.

### II. Jurisdiction.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and the general order of reference entered in this district pursuant to 28 U.S.C. § 157(a). D. Me. Local R. 83.6(a). Venue here is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(G).

1

### III. Facts.[1]

In 1999, Ms. Anderson and her then husband borrowed $94,000 from Norwest Mortgage. They memorialized the loan with a promissory note and secured the obligations of the note by granting Norwest Mortgage a mortgage deed to the Property, which they jointly owned. Norwest later merged into Wells Fargo, and began a foreclosure action in 2005 concerning the Property in the York District Court for the State of Maine. Wells Fargo obtained a foreclosure judgment in June of 2005, and upon the expiration of the foreclosure redemption period in September of 2005, Wells Fargo scheduled a foreclosure sale of the Property for November 8, 2005. The day before the auction was scheduled to occur, Ms. Anderson filed the first of her five chapter 13 bankruptcy cases (Case No. 05-22975) and the automatic stay of 11 U.S.C. §362(a) prevented the foreclosure sale from occurring. Her initial schedules indicated that the Property had a market value of $185,000, that she owned a one-half joint interest in it, and that Wells Fargo had a secured claim of $90,000. This case was short-lived. Ms. Anderson never filed the required chapter 13 plan and, as a result, this Court dismissed the case on January 9, 2006.

The next day, Ms. Anderson filed her second chapter 13 bankruptcy case (Case No. 06-20007) and the automatic stay again prevented Wells Fargo from proceeding forward with the sale of the Property. Her initial schedules again indicated that the Property had a market value of $185,000, that she owned a one-half joint interest in it,[2] and that Wells Fargo had a secured claim of $90,000. Wells Fargo filed a proof of claim in the second case which described its claim as

---

[1] The parties stipulated to many facts (see Docket Entry "DE" 47). Other are taken from the dockets of Ms. Anderson's five bankruptcy cases in this Court. Fed. R. Evid. 201(c)(1) made applicable by Fed. R. Bankr. P. 9017. In re Reed, 587 B.R. 202, 204 note 1 (Bankr. D. Me. 2017). Finally, some of the facts here came from the evidence presented at the October 9, 2018 hearing.

[2] During the pendency of her second case, Ms. Anderson and Mr. Barrager were divorced and he conveyed his interest in the Property to her.

2

secured in the amount of $106,351.52. The proof of claim contained an itemization of the arrearage claimed by Wells Fargo and provided supporting documentation.

Wells Fargo also filed a motion for relief from the automatic stay, which included a worksheet itemizing its claim of $106,351.42 and providing supporting documentation. While Ms. Anderson initially challenged Wells Fargo's claim and requested an updated payment history, the parties ultimately stipulated that Ms. Anderson was $1,190.14 in arrears and that relief from stay could enter if she failed to repay the arrearage or make her current monthly payments. However, two months later, on December 13, 2010, she voluntarily dismissed her second case because she was told that with no steady employment, she would not be able to modify her loan with Wells Fargo.

Two months after that, Ms. Anderson filed her third chapter 13 bankruptcy case (Case No. 11-20143) and again the automatic stay prevented Wells Fargo from proceeding with its efforts to sell the Property. Unlike in her prior two cases, this time Ms. Anderson initially alleged that the Property was worth $84,000, that she was its sole owner, and that Wells Fargo had a secured claim of $84,000. As in the prior case, Wells Fargo filed a proof of claim, describing its secured claim in the amount of $98,671.58. The proof of claim also included supporting documentation and delineated the various components of the claim, including the principal amount due, arrearages, late charges, attorneys' fees, escrow shortages, appraisal costs, and inspection fees. On January 27, 2012, the Court confirmed Ms. Anderson's chapter 13 plan on an interim basis and reserved the resolution of Ms. Anderson's challenge to Wells Fargo's claimed arrearages to a later date. Ms. Anderson filed four motions challenging the arrearage claim but withdrew all of them prior to any court determination.

Ms. Anderson and Wells Fargo engaged in loan modification discussions, and though the details are cloudy, Ms. Anderson acknowledged that she received a loan modification proposal from Wells Fargo on March 25, 2013, which provided for a reduced monthly payment but extended the loan term from 30 to 40 years, decreased the interest rate and increased the modified unpaid balance by $17,303.45.  Ms. Anderson claimed that she did not consent to this proposed modification because she never received an adequate explanation of the modified unpaid balance and, on August 14, 2013, she voluntarily converted her chapter 13 case to one under chapter 7.   Ms. Anderson received a chapter 7 discharge in due course, and her third bankruptcy case was closed on November 25, 2013.

With no bankruptcy stay in effect, Wells Fargo moved forward in the state court foreclosure action and obtained an order extending the deadline to publicize and conduct the foreclosure sale.  However, before the sale could occur, Ms. Anderson filed her fourth chapter 13 bankruptcy case on March 24, 2014 (Case No. 14-20199).  She testified that she did so to save her home from a foreclosure sale, and the automatic stay again prevented continued foreclosure activity by Wells Fargo.  In her fourth case, Ms. Anderson reported that the Property was worth $160,000, that she was its sole owner, and that Wells Fargo had a secured claim of $98,000.  As in her most recent two bankruptcy cases, Wells Fargo filed a proof of claim, identifying its secured claim in the amount of $102,891.37.  This proof of claim included documentation supporting the bank's claim, including a three-page "Mortgage Proof of Claim Attachment", which described each element of Wells Fargo's claim along with the principal amount due, the total interest due with relevant dates and interest rates, and the total pre-petition fees, expenses and charges.  This document also provided a description of each fee or charge and the date each was incurred.

4

In August of 2015, Wells Fargo proposed a trial loan modification, and approximately one month later, Ms. Anderson moved this Court to approve it. Her motion and its attachments informed the Court that the unpaid principal balance on her loan to Wells Fargo was $77,309.34, the additional amount to be capitalized on that loan was $31,189.26, and the new principal balance was $108,498.60. It also noted that the interest rate would be lowered from 8.00% to 3.75%, the term would extend from 30 years to 40 years, and the modified monthly payment would decrease from $959.72 to $836.51. On October 28, 2015, this Court granted Ms. Anderson's motion for approval of a trial loan modification agreement[3] and four months later, confirmed Ms. Anderson's third amended chapter 13 plan which was premised upon the modification. Notwithstanding this Court's approval of her plan and the trial loan modification, Ms. Anderson ultimately refused to enter into the final loan modification as she disputed the amount of the unpaid principal balance which was the same amount set forth in the trial loan modification approved by the Court. She then defaulted on her post-petition payments to Wells Fargo and, on June 1, 2017, Wells Fargo filed a motion seeking relief from the automatic stay. As with its other motions for relief from stay, this one included a worksheet which provided detailed information for the basis of its claim. It also contained the affidavit of Erika Anthony, a vice president of loan documentation for Wells Fargo, which did the same. Ms. Anderson initially objected to Wells Fargo's motion but subsequently withdrew her objection, and the Court granted Wells Fargo relief from stay on July 12, 2017. Approximately three weeks later,

---

[3] Although not dispositive of the issues before this Court, there was conflicting evidence presented as to the loan modification agreement. The loan modification cover letter from Wells Fargo to Ms. Anderson was dated March 17, 2006 and included a warning to Ms. Anderson that if she failed to sign and return the loan modification within 15 days, Wells Fargo would cancel the modification request. Page one of the loan modification agreement represented that it was executed on August 21, 2015 but the agreement was signed by Ms. Anderson and acknowledged before her attorney on June 1, 2016.

5

Ms. Anderson's fourth bankruptcy case was dismissed without prejudice due to her failure to file an amended motion to allow and disallow claims.

Again, with no stay in place to prevent it from doing so, on January 25, 2018, Wells Fargo filed a motion to enlarge time to publish the sale of the Property in the state court foreclosure action. Ms. Anderson objected to that motion on the grounds that Wells Fargo dawdled in enforcing its foreclosure remedies and therefore could not meet the "good cause" requirement of 14 M.R.S.A. §6323(3). The York District Court overruled her objection on April 26, 2018[4] and the sale of the Property was scheduled for July 11, 2018.

Three days before the scheduled foreclosure sale, Ms. Anderson filed her current chapter 13 bankruptcy (Case No. 18-20376), her fifth in thirteen years. In this case, Ms. Anderson values the Property at $210,590, claims to be its sole owner and maintains that Wells Fargo's secured claim totals $89,879.64. Wells Fargo filed the pending motion for in rem relief from the automatic stay on August 28, 2018, maintaining that as of August 21, 2018, Ms. Anderson owed it $116,680.67, less any partial payments or suspense balance. On September 11, 2018, Ms. Anderson filed her opposition to Wells Fargo's motion for relief from stay noting, among other things, that (a) she has not abused the bankruptcy process, (b) she has made numerous payments on the Wells Fargo loan since the foreclosure judgment entered in 2005, (c) Wells Fargo has never provided her with an explanation as to the modified unpaid loan balance in its proposed loan modifications, and (d) she has not been the sole source of the delay in Wells Fargo's attempt to enforce its foreclosure judgment.

---

[4] The York District Court stated in part: "The court finds the good cause has been shown. Good cause is generally a fact specific inquiry. In the present matter this is no indication that the Plaintiff acted in bad faith in delaying the sale of foreclosed property. While the Plaintiff could at several points have asked the bankruptcy court to allow the sale of the property go forward, Plaintiff's failure to take advantage of that opportunity has not disadvantaged the Defendant or, apparently, anyone else. Instead the Defendant has enjoyed the significant benefit of staying in the property ever since the foreclosure judgment was entered. Under these circumstances, Plaintiff has met its burden of showing the existence of good cause." See Joint Exhibit 1, at p 2.

### III. Discussion.

While the filing of a bankruptcy case automatically operates as a stay of various creditor activity, 11 U.S.C. §362(a), this Court must grant relief from it in specific instances. For example, 11 U.S.C. § 362(d)(4)(B), the subsection through which Wells Fargo seeks relief, provides:

> On request of a party in interest and after notice and a hearing, the court <u>shall</u> grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-- . . . with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property (emphasis added).

Relief under this subsection is broad and is generally binding in future bankruptcy cases commenced within two years of the entry of a court's relief from stay order. 11 U.S.C. § 362(d)(4). Although there is no binding First Circuit Court of Appeals authority on this subsection, see <u>In re Taal</u>, 520 B.R. 370, 377 (Bankr. D.N.H. 2014), this Court reads the statute to require relief from stay when three things are established: (a) the existence of a creditor whose claim is secured by an interest in real property, (b) that the filing of the latest bankruptcy petition was part of a scheme with the purpose of delaying, hindering or defrauding the creditor, and (c) the real property was affected by multiple bankruptcies. Here, Wells Fargo, as the party seeking in rem stay relief, carries the burden of proving that it is entitled to it. <u>In re Olayer</u>, 577 B.R. 464, 468 (Bankr. W.D. Pa. 2017). A court presented with such a motion should examine all of the facts concerning the various bankruptcy cases. <u>In re Khurana</u>, 2015 WL 4464508, at *10 (Bankr. D. Idaho July 21, 2015); <u>In re Taal</u>, 520 B.R. at 379; <u>In re Briggs</u>, 2012 WL 3780542, at *6 (Bankr. N.D. Ill. Aug. 31, 2012); <u>In re Young</u>, 2007 WL 128280, at *9 (Bankr. S.D. Tex. Jan. 10, 2007). Essentially it should consider the totality of the circumstances.

7

Applying the legal standard to the relevant evidence, this Court concludes that Wells Fargo clearly met its burden. Ms. Anderson does not contest that the first and last elements are satisfied for good reason. As to the first, there is no dispute that Ms. Anderson's obligations to Wells Fargo are secured by the Property. Wells Fargo is the holder of a validly recorded mortgage deed for the Property and a perfected foreclosure judgment. As to the third element, the Property was directly affected by the successive bankruptcies by, among other things, the effect of the automatic stay in each of those cases. The chronology shows that the stays in the first and fifth cases prevented the imminent sale of the Property by Wells Fargo. Further, Wells Fargo's motions for relief from stay in the second, third and fourth cases establish that the stays in those cases affected Wells Fargo's attempts to move forward with the state foreclosure process.

That leaves the second element, and because Wells Fargo conceded at trial that it does not seek in rem relief on the grounds that Ms. Anderson's actions hindered or defrauded it, the question is limited to whether the filing of Ms. Anderson's fifth bankruptcy petition was part of a scheme to delay Wells Fargo from exercising its rights against the Property. Congress did not define the word "scheme" in the Bankruptcy Code and courts construe the word in a variety of ways. Some hold that a "scheme" warranting in rem relief implies "a level of insidiousness or deceitfulness." In re 177 Weston Rd., LLC, 2011 WL 3032745, at *2 (Bankr. D. Conn. July 22, 2011). Others require a "scheme" to be "an intential artful plot or plan." In the matter: House, 2018 WL 1505572, at *5 (Bankr. E.D. Wis. Mar. 26, 2018) citing In re Wilke, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010); In re Khurana, 2015 WL 4464508, at *2; In re Hymes, 2013 WL 653060, at *5 (Bankr. D. Alaska Feb. 20, 2013).

When a word is not described in a statute, courts should afford it "its ordinary or natural meaning." F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994); Minor v. Mechanics' Bank of Alexandria, 26 U.S. 46, 64 (1828). According to the Oxford English Dictionary, the noun "scheme" means: "A plan of action devised in order to attain some end; a purpose together with a system of measures contrived for its accomplishment; a project, enterprise. Often with unfavorable notion, a self-seeking or an underhand project, a plot (cf. scheme *v.*, scheming *adj.*), or a visionary or foolish project." Oxford English Dictionary (2018). Black's Law Dictionary has two definitions for the noun "scheme": "A systemic plan; a connected or orderly arrangement, esp. of related concepts <legislative scheme>. 2. An artful plot or plan, usu. to deceive others <a scheme to defraud creditors>." Black's Law Dictionary (10th ed. 2014). In the context raised here and based upon a review of the case law, the structure of the Code, the plain language of §362(d), and the general usage of the word "scheme", this Court understands the word to mean an intentional plan to accomplish a particular result.

While most debtors may not admit to creating a scheme, a court may extrapolate or infer from the circumstances and evidence in a case that a scheme exists. In re Tejal Inv., LLC, 2012 WL 6186159, at *5 (Bankr. D. Utah Dec. 12, 2012); In re Briggs, 2012 WL 3780542, *5. "Relevant to this analysis is whether a debtor has evinced no true intention to reorganize their financial affairs and whether a debtor's previous filings were prosecuted to any meaningful degree." In re Valid Value Properties, LLC, 2017 WL 123751, at *7 (Bankr. S.D.N.Y. Jan. 5, 2017) (quotations and citations omitted). "Facts from which courts will extrapolate include not only how many cases make up the 'multiple filings' element, but case resolution. Were the prior cases dismissed without confirmation, or without discharge? . . . Were the debtor's prior cases 'strategically timed' vis-a-vis potentially adverse state court action? . . . Is there evidence of a

9

change in circumstances necessitating the filings? . . . Did the debtor have a legitimate belief she could reorganize, in each case? . . . Is there a 'tag-team' pattern of serial filings by each co-debtor?" House, 2018 WL 1505572, at *5 (citations and parentheticals omitted). A court can infer an intent to hinder, delay, or defraud creditors based solely upon serial filings without the need for an evidentiary hearing. In re Valid Value Properties, LLC, 2017 WL 123751, at *8.

Although Ms. Anderson originally challenged Wells Fargo's assertion that such a scheme existed, she backed away from that strategy at trial.[5] She testified that the primary design of all of her bankruptcies was to save her house or, at least initially in the second case, to preserve her interests in it. The automatic imposition of the stays in each of her five cases prevented Wells Fargo from moving forward with the culmination of the foreclosure process commenced in 2004 – the sale of the Property. Her use of the automatic stay to forestall foreclosure sales or to engage in loan modification negotiations with Wells Fargo does not necessarily evince bad intent, deceit, fraud, or abuse. The Code offered her a tool, §362(a), and she had the right to try to use it. However, a debtor's right to the automatic stay is not unfettered. The Code also provides protections for Wells Fargo, including those under §362(d)(4). The evidence here establishes that several of Ms. Anderson's cases, including this one, were strategically filed on the eve of a scheduled foreclosure sale. Two of the cases were dismissed or converted without a confirmed final plan. In one of her cases, Ms. Anderson refused to enter into a final loan

---

[5] Instead, she apparently conceded the filings were part of a scheme, but argued that such scheme was necessary to "get Wells Fargo's attention" after the bank purportedly breached a final loan modification and refused to provide the account history she requested. The evidence does not support either of these points, however. Her pretrial stipulation with Wells Fargo made it clear that the loan modification offered by Wells Fargo and approved by the Court was a ***trial*** loan modification. Stipulation of Uncontested Facts, ¶ 18 (Docket No. 47). Ms. Anderson further stipulated that she refused to enter into a final loan modification because she disagreed with the amounts Wells Fargo claimed were due. Id. at ¶ 19. The evidence also established that she did not make all of her required payments to Wells Fargo. See, e.g., Stipulation in Connection with Motion for Relief, Case No. 06-20007, Docket 137, ¶ 1 ("The Debtor(s) failed to make regularly scheduled post-petition mortgage payments to the Movant [Wells Fargo] for the months of April, 2010 through July, 2010 failed to make payments April – June 2010.")

modification on the same terms for which she sought and obtained court approval. Although she initially testified that she entered into a permanent loan modification with Wells Fargo, upon further examination she conceded that the modification was only temporary. During the span of the 13 years from Ms. Anderson's first bankruptcy through this one, Ms. Anderson has failed to resolve the treatment of Wells Fargo's claim either by agreement or by court determination. Although Ms. Anderson testified that Wells Fargo failed to provide her with adequate information with which to determine the basis of its claim against her, that testimony is undercut by the evidence presented to the Court, which included Wells Fargo's proofs of claim, its motions for relief from stay, and its opposition to her motion to allow and disallow claims. These and other papers filed by Wells Fargo establish that Wells Fargo provided detailed explanations and supporting documentation of its claim to Ms. Anderson on multiple occasions and Ms. Anderson never raised any meaningful challenge to Wells Fargo's accounting.

Reviewing all of the facts surrounding Ms. Anderson's five cases leads this Court to the conclusion that the filing of this latest case was part of an intentional effort by Anderson to prevent Wells Fargo from completing the foreclosure sale of the Property. In other words, this fifth case was part of a plan to delay Wells Fargo from exercising its state law rights respecting the Property. Wells Fargo has successfully established the elements for in rem relief under §362(d)(4) and therefore this Court has no option but to grant Wells Fargo the relief it seeks.

### IV. Conclusion.

For these reasons, Wells Fargo is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4)(B).

Date:  November 20, 2018                    /s/ Peter G. Cary
                                             Honorable Peter G. Cary
                                             United States Bankruptcy Court